**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ONE-E-WAY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CIVIL ACTION NO. 1:24-cv-1558-RP |
| v. | § | |
| | § | |
| DELL TECHNOLOGIES INC. | § | JURY TRIAL DEMANDED |
| AND DELL INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

---

**DEFENDANTS DELL TECHNOLOGIES INC. AND DELL INC.'S MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .................................................................................................1

II.    BACKGROUND ...................................................................................................1

     A.    The Asserted Patents ..................................................................................1

     B.    OEW's Previous Litigation of the '627 and '047 Patents ....................4

     C.    OEW Sues Dell for Patent Infringement on the '000, '627 and '047 Patents ................................................................................................5

III.    LEGAL STANDARD ...........................................................................................6

IV.    ARGUMENT .........................................................................................................7

     A.    OEW's Claims of Direct Infringement Should Be Dismissed With Prejudice .............................................................................................7

            1.    OEW is Collaterally Estopped from Applying a Different Construction for "Unique User Code" in this Case ...................................................................................................9

            2.    OEW is Collaterally Estopped from Asserting Direct Infringement by Accused Products Compliant with the Bluetooth Standard .............................................................................11

            3.    There is No Basis in Law or Fact to Preclude Application of Collateral Estoppel in This Case ....................................17

     B.    OEW is Collaterally Estopped from Asserting Direct Infringement under the Doctrine of Equivalents by Accused Products Compliant with the Bluetooth Standard ................................18

     C.    OEW's Claims of Induced and Contributory Infringement Should Be Dismissed ................................................................................19

     D.    The Complaint Should be Dismissed with Prejudice Because Amendment Would be Futile .....................................................................19

V.    CONCLUSION ....................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Arunachalam v. Exxon Mobil Corp.*,
   2019 WL 10303695 (W.D. Tex. June 26, 2019) ..................................................................... 6

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
   713 F.3d 1377 (Fed. Cir. 2013) ................................................................................ 9, 10, 17

*Bradberry v. Jefferson Cty., Tex.*,
   732 F.3d 540 (5th Cir. 2013) ................................................................................ 6, 7, 11, 17

*Causey v. Sewell Cadillac–Chevrolet, Inc.*,
   394 F.3d 285 (5th Cir. 2004) ........................................................................................ 13

*CTD Networks, LLC v. Amazon.com, Inc.*,
   688 F. Supp. 3d 436 (W.D. Tex. 2023) ......................................................................... 19

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004) ..................................................................................... 19

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011) ..................................................................................... 11

*Jet, Inc. v. Sewage Aeration Sys.*,
   223 F.3d 1360 (Fed. Cir. 2000) ....................................................................................... 7

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
   453 B.R. 645 (N.D. Tex. 2011) ...................................................................................... 13

*Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*,
   751 F.3d 368 (5th Cir. 2014) ......................................................................................... 19

*Ohio Willow Wood Co. v. Alps S., LLC*,
   735 F.3d 1333 (Fed. Cir. 2013) ....................................................................................... 7

*One-E-Way, Inc. v. Apple Inc.*,
   2022 WL 2564002 (C.D. Cal. Jun. 15, 2022).......................................................*passim*

*One-E-Way, Inc. v. Apple Inc.*,
   2023 WL 5199501 (Fed. Cir. Aug. 14, 2023) .....................................................*passim*

*One-E-Way, Inc. v. Apple Inc.*,
   2022 WL 2189529 (C.D. Cal. Mar. 9, 2022) ................................................................ 4, 10

*Parklane Hosiery Co. v. Shore,*
  439 U.S. 322 (1979) ............................................................................................ 6

*Phil-Insul Corp. v. Airlite Plastics Co.,*
  854 F.3d 1344 (Fed. Cir. 2017) .............................................................. 8, 10, 11

*Randall D. Wolcott, M.D., P.A. v. Sebelius,*
  635 F.3d 757 (5th Cir. 2011) ............................................................................. 13

*Roche Palo Alto LLC v. Apotex, Inc.,*
  531 F.3d 1372 (Fed. Cir. 2008) ......................................................................... 11

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC,*
  778 F.3d 1311 (Fed. Cir. 2015) ...................................................................... 7, 9

*Wisconsin Alumni Research Foundation v. Apple Inc.,*
  112 F.4th 1364 (Fed. Cir. 2024) ....................................................................... 18

**Rules**

Fed. R. Civ. P. 10(c) ............................................................................................ 13

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1

Defendants Dell Technologies Inc. and Dell Inc. (collectively "Dell" or "Defendants") file this Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and respectfully show the following.

## I.    INTRODUCTION

Plaintiff One-E-Way, Inc. ("OEW") filed its Complaint on December 18, 2024 (Dkt. No. 1). OEW accuses Dell of directly and indirectly infringing three expired patents. Unlike the typical patent case, however, the Federal Circuit has already decided this case—against OEW. Specifically, the Federal Circuit affirmed a judgment of non-infringement against Apple involving two of the same OEW patents asserted here, rejecting OEW's infringement allegation that Bluetooth-compatible devices include a "unique user code." OEW's Complaint in this case should be dismissed for this same reason, and indeed it is collaterally estopped from asserting that Dell or anyone else who makes Bluetooth-compatible devices directly infringes the asserted claims of the Asserted Patents as a matter of law. This failure also dooms OEW's claims for indirect infringement, because direct infringement by others is a necessary predicate to prove active inducement and contributory infringement. Moreover, OEW cannot cure these defects by amending its Complaint. Therefore, Dell respectfully requests that the Court grant this motion and dismiss the Complaint with prejudice.

## II.    BACKGROUND

### A.    The Asserted Patents

OEW asserts U.S. Patent Nos. 9,107,000 ("the '000 patent," attached as Exhibit A to the Declaration of Barry Shelton[1]), 10,129,627 ("the '627 patent," attached as Exhibit B), and 10,468,047 ("the '047 patent," attached as Exhibit C) (collectively "Asserted Patents"). Dkt. No.

---

[1] All exhibits referenced herein are attached to the Shelton Declaration.

1 at ¶¶ 10-12. The Asserted Patents are continuations in the same patent family sharing the same specification, and claim priority to the same parent patent application filed December 21, 2001. *See id.* at ¶ 13. The Asserted Patents expired several years ago. *See id.* at ¶ 14. Every claim of the Asserted Patents requires a "unique user code," the claim term that is central to this Motion. Claim 9 of the '000 patent, an apparatus claim, is representative of the "receiver" claims asserted against Dell and is set forth below with references to "unique user code" bolded:

> 9. A mobile wireless digital audio receiver capable of being moved in any direction during operation and configured to receive a **unique user code** and an original audio signal representation in the form of packets, said **unique user code** used to spread a spectrum of said signal and further configured for independent CDMA communication operation, said receiver independent of the operation of another receiver, said wireless digital audio receiver comprising:
>
> a spread spectrum receiver module configured to capture packets and a correct bit sequence within the packets aided by lowering signal detection error through reduced intersymbol interference coding of said original audio signal representation, said packets embedded in the received spread spectrum signal, the captured packets corresponding to the **unique user code**;
>
> a decoder operative to decode the reduced intersymbol interference coding of said original audio signal representation, wherein each user has their audio receiver configured to communicate with their own separate audio transmitter, and said audio virtually free from interference from transmission and reception device signals operating in the shared spectrum.

Ex. A ('000 patent) at 7:24-8:7 (emphasis added).

Claim 8 of the '000 patent, an apparatus claim, is representative of the "transmitter" claims asserted against Dell and is set forth below with the reference to "unique user code" bolded:

> 8. A wireless digital coded music audio spread spectrum transmitter operatively coupled to a music audio source and configured to transmit **a unique user code** and an original audio signal representation in the form of packets, wherein said digital coded music audio transmitter coupled to said music audio source, and configured to be directly communicable with a mobile digital audio

spread spectrum receiver, is capable of being moved in any direction during operation, said wireless digital coded audio transmitter comprising:

> encoding operative to encode said original audio signal representation to reduce intersymbol interference and aid in lowering signal detection error of said audio representation signal respective to said receiver and mobile said transmitter coupled to said music audio source;

> a digital modulator module configured for independent code division multiple access communication operation, wherein each user has their own separate transmitter configured to communicate with their receiver, said transmitter configured to wirelessly transmit said audio to be reproduced virtually free from interference from transmission and reception device signals operating in the wireless digital audio transmitter shared spectrum.

*Id*. at 7:1-23 (emphasis added). The Asserted Patents teach that the "unique user code" is "specifically associated with one wireless digital audio system user":

> The battery powered transmitter **20** may contain a code generator **44** that may be used to create a **unique user code**. The **unique user code** generated **is specifically associated with one wireless digital audio system user**, and it is the only code recognized by the battery powered headphone receiver **50** operated by a particular user.

*Id*. at 2:56-61; Ex. B ('627 patent) at 2:64-3:3; Ex. C ('047 patent) at 2:60-66 (emphasis added).

During prosecution of U.S. Patent Application No. 10/648,012—a parent application with the same written description as the Asserted Patents—the applicant overcame prior art by distinguishing between user codes and device codes. Specifically, the applicant contended U.S. Patent No. 5,491,839 (Schotz) uses "codes [that] are assigned to specific devices for a single household—not individual users." App. No. 10/648,012, March 14, 2006 Amendment/Response at 14 (attached as Exhibit D). Because the codes were assigned to devices, the applicant explained "the Schotz code may be properly deemed a 'device code' as opposed to a 'user code' as in the present invention." *Id*.

B.    **OEW's Previous Litigation of the '627 and '047 Patents**

OEW previously litigated the '627 and '047 patents in the Central District of California in *One-E-Way, Inc. v. Apple Inc.* The parties in that case agreed that "unique user code" should be construed as "fixed code (bit sequence) specifically associated with one user of a device(s)." *One-E-Way, Inc. v. Apple Inc.*, No. 2:20-CV-06339-JSK-PD, 2022 WL 2189529, at *6 (C.D. Cal. Mar. 9, 2022). The court found "[t]he parties' agreed constructions are accepted and are binding" in its claim construction order. *Id*. OEW accused Apple products compliant with the Bluetooth standard of infringing claims 1–6 and 10–12 of the '627 patent and claims 1 and 17 of the '047 patent. *See One-E-Way, Inc. v. Apple Inc.*, 2022 WL 2564002, at *1, *9 (C.D. Cal. Jun. 15, 2022). Apple moved for summary judgment of non-infringement because "the accused products do not have a 'unique user code' as required by the Asserted Claims." *Id*. at *6. Despite OEW *agreeing* to the construction of "unique user code," it disputed "whether the phrase 'associated with one user of a device(s)' means 'to distinguish between different humans operating the audio system' or 'to distinguish the audio system's private listening channel from other nearby systems[.]'" *Id*. The court held "[t]he clear meaning of 'user code,' as reflected in the parties' agreed upon construction, means that the code is 'associated with one user of a device(s),' and not the device itself." *Id*. at *7.

OEW asserted "all Bluetooth devices use a 'channel access code' ('CAC') in connection with the 'logical transport address' ('LT_ADDR'), which it asserts satisfies the 'unique user code' limitation." *Id*. at *9. Apple contended "that those codes 'are associated with *devices* in a Bluetooth piconet,' not particular users." *Id*. (emphasis in original). At the hearing, the parties agreed there was "no genuine dispute that the accused products do not infringe under that construction." *Id*. The district court therefore granted summary judgment of non-infringement to Apple based on the court's construction. *See id*.

OEW appealed the summary judgment decision. The Federal Circuit affirmed the district court's holding that "under the plain meaning of the phrase 'associated with one user of a device(s),' the unique user code is associated with one user of a device and not the device itself." *One-E-Way, Inc. v. Apple Inc.*, 2023 WL 5199501, at *2 (Fed. Cir. Aug. 14, 2023). The Federal Circuit further affirmed the grant of summary judgment of non-infringement "[b]ecause the parties agreed there is no genuine dispute of material fact that Apple's accused Bluetooth-complaint devices do not infringe under such construction." *Id*. at *3. OEW did not petition the Supreme Court for a writ of *certiorari*, so the Federal Circuit's decision is binding on OEW here.

### C.    OEW Sues Dell for Patent Infringement on the '000, '627 and '047 Patents

OEW accuses Dell's "Accused Receiver Products" of directly infringing "at least claim 9" of the '000 patent, "at least claim 1" of the '627 patent, and "at least claim 1" of the '047 patent, and further accuses Dell's "Accused Transmitter Products" of directly infringing "at least claim 8" of the '000 patent, "at least claim 5" of the '627 patent, and "at least claim 17" of the '047 patent. Dkt. No. 1 at ¶¶ 19, 32. Each of the asserted claims of the Asserted Patents requires a "unique user code." *See* Ex. A ('000 patent) at 7:1-23 (claim 8), 7:24-8:7 (claim 9); Ex. B ('627 patent) at 4:61-5:35 (claim 1), 6:17-52 (claim 5); Ex. C ('047 patent) at 4:56-5:27 (claim 1), 6:46-64 (claim 17).

Paragraphs 20-31 of the Complaint contain OEW's allegations of direct infringement regarding the Accused Receiver Products, and paragraphs 32-41 of the Complaint contain OEW's allegations of direct infringement regarding the Accused Transmitter Products. OEW further alleges that Dell is liable for active inducement and contributory infringement of the Asserted Patents. *See id*. at ¶¶ 50, 51, 56, 57, 62, 63.

OEW's infringement theory for all asserted claims is based on products compliant with the Bluetooth 5.0 standard. *See id.* at ¶¶ 19, 32. OEW alleges "[t]he receivers of the Accused Receiver

Products receive a unique user code, e.g., BD_ADDR and unique user-friendly name ('UFN'), from a digital audio spread spectrum transmitter during, e.g., device discovery, pairing, and/or audio streaming." *Id*. at ¶ 21. OEW further alleges that "[t]he transmitters of the Accused Transmitter Products transmit a unique user code, e.g., BD_ADDR and unique user-friendly name ('UFN'), to a digital audio spread spectrum receiver during, e.g., device discovery, pairing, and/or audio streaming." *Id*. at ¶ 34. Thus, OEW accuses the "BD_ADDR and unique user-friendly name ('UFN')" identifiers of the Bluetooth 5.0 standard of meeting the "unique user code" limitation of all asserted claims. However, the accused BD_ADDR and UFN are identifiers associated with the accused devices themselves, not users thereof, as required by the Federal Circuit. For example, the BD_ADDR is a string of numbers (such as "00:0C:3E:3A:4B:69") that is "used by a ***device***."[2] Similarly, the UFN is "the user-friendly name that a Bluetooth ***device*** exposes to remote devices."[3] As this Motion will demonstrate, OEW is collaterally estopped from asserting its infringement theory based on device codes, not user codes, and without this theory, OEW cannot prove direct or indirect infringement as a matter of law.

## III.    LEGAL STANDARD

Collateral estoppel, also known as issue preclusion, "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries' and prevents a plaintiff from 'asserting a claim that the plaintiff had previously litigated and lost against another defendant.'" *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (citation omitted). "The issue of whether to apply collateral estoppel is a question of law." *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 549 (5th Cir. 2013). Thus, the issue of whether to apply collateral estoppel may be properly addressed in a motion to dismiss. *See, e.g., Arunachalam v. Exxon Mobil Corp.*, No. 6:19-CV-00171-ADA, 2019 WL

---

[2] Bluetooth Core Specification, cited in Dkt. No. 1, ¶ 21 and attached as Exhibit F.
[3] *Id*.

10303695, at *1 (W.D. Tex. June 26, 2019). Regional circuit law governs the general procedural question of whether collateral estoppel (i.e., issue preclusion) applies, but Federal Circuit law governs questions involving substantive issues of patent law. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). For example, "the question whether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases, and [a court should] therefore apply [Federal Circuit] law to that issue." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). (citations omitted). The Fifth Circuit has held that collateral estoppel applies if: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Bradberry*, 732 F.3d at 548.[4] The Federal Circuit standard for issue preclusion requires four conditions: "(1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and, (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000).

## IV.    ARGUMENT

### A.    OEW's Claims of Direct Infringement Should Be Dismissed With Prejudice

The history of this case is on all fours with the Federal Circuit's decision affirming collateral estoppel on both claim construction and non-infringement in *Phil-Insul Corp. v. Airlite Plastics Co.* As discussed below, the Federal Circuit's holding in *Phil-Insul* bars OEW from asserting that Dell's accused Bluetooth-compliant products infringe the Asserted Patents as a matter of law.

---

[4] A fourth factor, "whether there are any special circumstances that make it unfair to apply the doctrine," applies only to offensive collateral estoppel, inapplicable here. *Id*.

The following table highlights the similarity between the facts here and the Federal Circuit's *Phil-Insul* decision:

| OEW Cases | *Phil-Insul v. Airlite Plastics* |
|---|---|
| District court construed key term in every asserted claim against Plaintiff | District court construed two key terms in every asserted claim against Plaintiff |
| District court granted summary judgment of non-infringement against Plaintiff | District court granted summary judgment of non-infringement against Plaintiff |
| Plaintiff appealed only the claim construction to Federal Circuit, which affirmed the construction | Plaintiff appealed only the claim constructions to Federal Circuit, which affirmed the constructions |
| Plaintiff accuses "essentially the same" accused products in subsequent case of infringing the same asserted claims and claims in a patent in the same family with the same affirmed term | Plaintiff accuses "essentially the same" accused products in subsequent case of infringing a different asserted claim containing the affirmed claim terms |

*See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1349-52 (Fed. Cir. 2017).

Plaintiff alleges that the accused Bluetooth-compliant products transmit or receive "a unique user code, e.g., BD_ADDR and unique user-friendly name ('UFN')." *See* Dkt. No. 1 at ¶¶ 21, 34. OEW is collaterally estopped from making this allegation for two reasons. First OEW is estopped from arguing that the construction of "unique user code" is anything other than "fixed code (bit sequence) specifically associated with one user of a device(s)," where "under the plain meaning of the phrase 'associated with one user of a device(s),' the unique user code is associated with one user of a device and not the device itself." *Apple*, 2023 WL 5199501, at *2. Second, OEW is estopped from arguing that "BD_ADDR and unique user-friendly name ('UFN')" are together or separately the "unique user code" of the asserted claims, because they are ***device*** identifiers, just like the CAC and LT_ADDR ***device*** codes OEW identified in the *Apple* case. *Id*. at *3. OEW is therefore collaterally estopped from asserting that Dell or any third party directly infringes the Asserted Patents based on the identified ***device*** identifiers in the accused Bluetooth-compliant products. Accordingly, the Court should dismiss this case with prejudice.

      1.      **OEW is Collaterally Estopped from Applying a Different Construction for "Unique User Code" in this Case**

Because claim construction is exclusively within the jurisdiction of the Federal Circuit, its test for issue preclusion applies to the question whether OEW is precluded from advancing a different construction for "unique user code" here. *Soverain*, 778 F.3d at 1314.

The same claims of the '627 (1 and 5) and '047 (1 and 17) patents asserted here were asserted in the *Apple* case, so the first factor of the Federal Circuit's standard for collateral estoppel, "identity of the issues in a prior proceeding," is met. Also, the Federal Circuit construction for "unique user code" applies to the asserted claims of the '000 patent, even though it was not asserted in the *Apple* case, because it is a continuation of the same earlier patents in the family to which the '627 and '047 patents claim priority. Moreover, the district court and Federal Circuit relied on OEW's arguments during prosecution of U.S. Patent Application No. 10/648,012, which issued as U.S. Patent No. 7,412,294 ("the '294 patent"), to support the construction of "unique user code." *See Apple*, 2023 WL 5199501, at *3. Each of the Asserted Patents claims priority to the '294 patent through successive continuation applications. *See* Exs. A-C at cover page. Therefore, the Federal Circuit decision applies with equal force to the asserted claims of the '000 patent. To the extent OEW contends that there is not an "identity of the issues in a prior proceeding" as to the '000 patent, the '000 asserted claims require the same "unique user code" that was determinative of non-infringement of the '627 and '047 patents in *Apple*. *See* Ex. A at claims 8 and 9. Accordingly, there is an identity of the issues in a prior proceeding with respect to the '000 patent. *See Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1381-1382 (Fed. Cir. 2013) ("This construction is determinative of noninfringement by the [accused product]; it is irrelevant whether the additional claims now in suit contain additional terms that were not previously construed.").

Furthermore, the other prongs of the Federal Circuit standard for collateral estoppel are easily met. First, "the issues were actually litigated," here the construction of "unique user code." The parties in *Apple* agreed on the construction for this term, which the district court accepted and made binding. *Apple*, 2022 WL 2189529, at *6. The court then interpreted the meaning of part of that agreed construction as part of its decision on summary judgment. *Apple*, 2022 WL 2564002, at *6-*9. The Federal Circuit construed the term *de novo* and affirmed the district court's construction. *See Apple*, 2023 WL 5199501, at *2-*3. Second, "the determination of the issues was necessary to the resulting judgment" as the judgment of non-infringement turned on the construction of "unique user code." Third and finally, "the party defending against preclusion had a full and fair opportunity to litigate the issues," demonstrated by the district court's thorough analysis of the term's meaning in its order granting summary judgment of non-infringement, and the Federal Circuit's *de novo* review. *See Apple*, 2022 WL 2564002, at *6-*9; *Apple*, 2023 WL 5199501, at *2-*3. "In determining whether [plaintiff] had a full and fair opportunity to litigate the dispositive claim limitations in the prior proceeding, '[i]t is the issues litigated, not the specific claims around which the issues were framed, that is determinative. Only by focusing on the issues, and examining the substance of those issues, can the second court ascertain whether the patentee had the requisite full and fair chance to litigate . . . in the first suit.'" *Aspex*, 713 F.3d at 1382 (citation omitted). Thus, all four factors of the Federal Circuit's test for collateral estoppel are met here to apply the Federal Circuit's construction for "unique user code" to the asserted claims of the '000, '627, and '047 patents. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357-58 (Fed. Cir. 2017) (affirming preclusive effect of claim constructions from previous case where the Federal Circuit's test for issue preclusion was met and same claim terms were at issue). There is no difference in the result if the Fifth Circuit's similar test for issue preclusion is applied instead:

"(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Bradberry*, 732 F.3d at 548. Accordingly, the Court should find as a matter of law that OEW is collaterally estopped from asserting that a different construction for "unique user code" applies here.

### 2. OEW is Collaterally Estopped from Asserting Direct Infringement by Accused Products Compliant with the Bluetooth Standard

OEW alleges that two identifiers, "BD_ADDR and unique user-friendly name ('UFN')," of the Bluetooth 5.0 standard meet the "unique user code" limitation of all asserted claims. Dkt. No. 1 at ¶¶ 21, 34. While these are not identical to the device identifiers OEW accused in the *Apple* case, they are "substantively the same" for the infringement analysis such that OEW should be precluded from asserting that they meet the limitation. *See Phil-Insul*, 854 F.3d at 1357, 1358 (affirming preclusive effect of previous determination of non-infringement of accused products "substantially the same as those at issue" in a subsequent case).

#### a. The Accused Products Here Are Indistinguishable from Those Accused in the *Apple* Case

The Federal Circuit has held that "an infringement claim in a second suit is the 'same claim' as in an earlier infringement suit if the accused products in the two suits are 'essentially the same.'" *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1379 (Fed. Cir. 2008) (citation omitted). "Accused products are 'essentially the same' where the differences between them are merely colorable or unrelated to the limitations in the claim of the patent." *Id.* A party asserting issue preclusion bears the burden of showing that the accused devices are essentially the same as those in the prior litigation. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311 (Fed. Cir. 2011).

Here, OEW accuses Bluetooth-compliant products, just as in the *Apple* case. *Compare* Dkt. No. 1 at ¶¶ 19, 32 *with Apple*, 2022 WL 2564002, at *9. Moreover, in both cases OEW relied on

the same version of the Bluetooth standard, 5.0, for its infringement contentions. *Compare* Dkt. No. 1 at ¶¶ 21, 26, 31, 34, 38, 39 *with* Apple's Motion for Summary Judgment (attached as Exhibit E), *One-E-Way, Inc. v. Apple Inc.*, No. 2:20-CV-06339-JSK-PD Dkt. No. 95 at 7 n.6 (C.D. Cal. Apr. 21, 2022) ("This motion cites the same version of the Bluetooth standard cited in OEW's infringement contentions, version 5.0."). Therefore, Dell has met its burden to show that the Bluetooth-compliant products accused here are "essentially the same" as in the *Apple* case.

Because the products in *Apple* and in this case are accused solely for their compliance with the Bluetooth standard and are therefore indistinguishable, this Court can dismiss the case with prejudice without considering OEW's specific infringement allegations here. Even if the Court considers OEW's allegations in this case, the result is the same: OEW is collaterally estopped from accusing Dell of infringing the Asserted Patents.

### b.    The Bluetooth Device Address Is Not a "Unique User Code"

OEW is collaterally estopped from asserting that the Bluetooth Device Address "BD_ADDR" meets the "unique user code" limitation as construed by the Federal Circuit. In the *Apple* district court case, OEW contended "all Bluetooth devices use a 'channel access code' ('CAC') in connection with the 'logical transport address' ('LT_ADDR'), which it asserts satisfies the 'unique user code' limitation." *Apple*, 2022 WL 2564002, at *9. The district court credited Apple's argument that "the CAC is derived from the Bluetooth device address (BD_ADDR) of the master device," "and is used to identify communications on a particular physical channel." *Id.* (citation omitted). OEW disputed that the CAC was a device code in opposing Apple's motion for summary judgment, but conceded at the hearing that "the only remaining dispute is a legal question regarding the construction of the term," which the court found was tied "to the identity of the user rather than the specific device." *Id.* OEW's concession in *Apple* binds it here. Importantly, because "the CAC is **derived from the Bluetooth device address** (BD_ADDR) of the master device," it

necessarily follows that the Bluetooth device address (BD_ADDR) is also a ***device*** code, not a user code. *See id*.

The Court should consider the Bluetooth Core Specification version 5.0 (excerpts attached as Exhibit F) that OEW cites and quotes throughout its Complaint in resolving this motion. "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotations omitted). A court may consider documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Courts treat such documents as incorporated into the plaintiff's complaint. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 & n.16 (N.D. Tex. 2011) (Lynn, J.) (citing Fed. R. Civ. P. 10(c)). Although the Fifth Circuit has not stated a test for determining whether a document is central to the plaintiff's claim such that a trial court may consider it when resolving a 12(b)(6) motion, Fifth Circuit precedent makes clear that a document is central to the plaintiff's claim if "necessary to establish an element of one of the plaintiff's claims." *Id.* at 662. Here, the Complaint cites and quotes the Bluetooth 5.0 standard extensively to establish that multiple limitations of the asserted claims are allegedly met. *See* Dkt. No. 1 at ¶¶ 21, 26, 31, 34, 38, 39. The Bluetooth 5.0 standard is "referred to in the complaint" and "necessary to establish an element of one of the plaintiff's claims." Therefore, the Court should consider the Bluetooth 5.0 standard in ruling on the instant motion.

The Bluetooth 5.0 standard proves that the Bluetooth device address is a unique device identifier that is user-agnostic and, accordingly, cannot be the "unique user code" of the asserted

claims. For example, section 1.2 of the standard explains that the BD_ADDR is a "unique 48-bit Bluetooth *device address*," as shown below.

## 1.2   BLUETOOTH DEVICE ADDRESSING

Each Bluetooth device shall be allocated a unique 48-bit Bluetooth device address (BD_ADDR). The address shall be a 48-bit extended unique identifier (EUI-48) created in accordance with section 8.2 ("Universal addresses") of the IEEE 802-2014 standard (http://standards.ieee.org/findstds/standard/802-2014.html).

Ex. F, Bluetooth Core Specification Version 5.0 Vol 2, Part B at 356. Moreover, section 15.1 of the standard requires that "[a]ll Bluetooth devices shall have a Bluetooth Device Address (BD_ADDR) that **uniquely identifies the device to another Bluetooth device**.":

## 15.1   BLUETOOTH DEVICE ADDRESS

All Bluetooth devices shall have a Bluetooth Device Address (BD_ADDR) that uniquely identifies the device to another Bluetooth device. The specific Bluetooth Device Address requirements depend on the type of Bluetooth device.

Ex. F, Bluetooth Core Specification Version 5.0 Vol 3, Part C at 2096 (emphasis added). Thus, the BD_ADDR is user-agnostic and accordingly cannot meet the Federal Circuit's construction for "unique user code."

### c.    The Bluetooth Device Name is Not a "Unique User Code"

OEW is also collaterally estopped from asserting that the Bluetooth Device Name meets the "unique user code" limitation as construed by the Federal Circuit. OEW will likely argue that the word "user" in the standard's reference to "user-friendly name" somehow makes this a "user identifier," not a device identifier, but this argument is precluded by OEW's concession of non-infringement in the *Apple* case. The Bluetooth standard states that the Bluetooth Device Name is simply a user-friendly name for a Bluetooth *device*, and as such is tied to the device, not

14

***specifically associated with one user of a device(s)***, as the construction of "unique user code"

mandates:

> **3.2.2 Bluetooth Device Name (the user-friendly name)**
>
> **3.2.2.1** *Definition*
>
> The Bluetooth device name is the user-friendly name that a Bluetooth device
> exposes to remote devices. For a device supporting the BR/EDR device type,
> the name is a character string returned in the LMP_name_res in response to
> an LMP_name_req. For a device supporting the LE-only device type, the name
> is a character string held in the Device Name characteristic as defined in
> Section 12.1.

Ex. F, Bluetooth Core Specification, Version 5.0 Vol. 3, Part C, Section 3.2.2, at 1988. The

description of the Bluetooth Device Name as being a "user-friendly name" merely distinguishes it

from other device identifiers used in the Bluetooth standard, such as the Bluetooth Device Address,

which is numeric (e.g., "00:0C:3E:3A:4B:69"), as discussed above. Indeed, OEW's quotation from

the Bluetooth standard underscores the device-specific nature of the device name: "[t]he user-

friendly Local Name provides the user ***the ability to distinguish one BR/EDR Controller from***

***another***." Dkt. No. 1 at ¶¶ 21, 34 (emphasis added). Nor does a user's ability to change the

Bluetooth Device Name, which OEW alleges in its Complaint, alter the Court's analysis. *See*, *e.g.*,

Dkt. No. 1 at ¶¶ 22, 23, 35, 41. The Bluetooth Device Name still identifies the name of a particular

Bluetooth ***device*** (e.g., "DESKTOP-XXXXXX"), and is not unique to the ***user*** of the device (the

name does not change depending on who uses the device), and therefore does not meet the binding

construction of "unique user code."

### d.    OEW is Precluded from Asserting that Device Identifiers are "Unique User Codes"

The Court should determine that OEW is collaterally estopped from alleging that Bluetooth

device identifiers meet the "unique user code" limitation of all asserted claims. Because this is a

substantive question of patent law, the Federal Circuit's standard for collateral estoppel applies.

The first factor of the test for collateral estoppel, "identity of the issues in a prior proceeding," is met. In the *Apple* case, the district court determined that the device codes included in the Bluetooth standard were user-agnostic and therefore could not meet the court's construction of "unique user code." Importantly, OEW vigorously argued that the Bluetooth CAC and LT_ADDR codes met the agreed construction of "unique user code" only to concede at the hearing that no genuine issue of material fact precluded summary judgment given the court's construction. This concession collaterally estops OEW here because OEW has conceded that Bluetooth device identifiers do not meet the binding construction of the term. As discussed *supra*, the Bluetooth Device Address and Bluetooth Device Name are of the same device-specific, user-agnostic character as the device codes that OEW conceded did not meet the construction in *Apple*.

The other prongs of the Federal Circuit standard for collateral estoppel are also met. First, "the issues were actually litigated," here the application of the construction of "unique user code" to Bluetooth device identifiers OEW accused. *Apple*, 2022 WL 2564002, at *9. Second, "the determination of the issues was necessary to the resulting judgment" as the judgment of non-infringement turned on the parties' agreement that the construction of "unique user code" was determinative to the question of infringement and therefore case-dispositive. *See id*. Third and finally, "the party defending against preclusion had a full and fair opportunity to litigate the issues," demonstrated by the district court's determination, affirmed by the Federal Circuit, that no genuine issue of material fact precluded grant of summary judgment of non-infringement. *See Apple*, 2022 WL 2564002, at *9; *Apple*, 2023 WL 5199501, at *3. "In determining whether [plaintiff] had a full and fair opportunity to litigate the dispositive claim limitations in the prior proceeding, '[i]t is the issues litigated, not the specific claims around which the issues were framed, that is determinative. Only by focusing on the issues, and examining the substance of those issues,

16

can the second court ascertain whether the patentee had the requisite full and fair chance to litigate . . . in the first suit.'" *Aspex*, 713 F.3d at 1382 (citation omitted). Thus, all four factors of the Federal Circuit's test for collateral estoppel are met here to preclude OEW from asserting that the Bluetooth Device Address and Bluetooth Device Name, whether separately or together, meet the "unique user code" limitation of the asserted claims of the '000, '627, and '047 patents. There is no difference in the result if the Fifth Circuit's similar test for issue preclusion is applied instead: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Bradberry*, 732 F.3d at 548. Accordingly, this Court should find as a matter of law that OEW is collaterally estopped from asserting that these device identifiers meet the limitation.

Because OEW bears the burden of proving that every element and limitation of the asserted claims is met by the accused devices, its inability to carry this burden against Dell is fatal to its case as a matter of law. Accordingly, the Court should dismiss OEW's claims of direct infringement by Dell or its customers of the accused products.

### 3.    There is No Basis in Law or Fact to Preclude Application of Collateral Estoppel in This Case

OEW included an additional patent, the '000 patent, from the same family to this litigation which it did not assert against the accused products in *Apple*. But OEW's addition of the '000 patent does not create a new issue to defeat preclusion. *See Aspex*, 713 F.3d at 1382 (affirming application of collateral estoppel and rejecting arguments of patent holder that assertion of patent claims and claim terms for construction that were not asserted in prior case creates new issue for litigation because "[t]he selection of additional claims for litigation and additional terms for 'construction' does not override the holding of non-infringement").

In the present litigation, the asserted patent claims include the same "unique user code" limitations which were determined to be not infringed by the accused products in *Apple*. As discussed above, the accused products in this litigation are based on the same Bluetooth standard as in the accused products in *Apple*. Thus, there will be no change in the result—the accused products in this litigation, like those accused in *Apple*, do not include the "unique user code" limitations. Therefore, OEW fails to create a new issue to defeat preclusion.

**B.    OEW is Collaterally Estopped from Asserting Direct Infringement under the Doctrine of Equivalents by Accused Products Compliant with the Bluetooth Standard**

OEW's Complaint makes vague allegations of direct infringement under the doctrine of equivalents, e.g., "[t]o the extent not literally present, One-E-Way reserves the right to proceed under the doctrine of equivalents." Dkt. No. 1 at ¶¶ 49, 55, 61. However, OEW's claims of direct infringement under the doctrine of equivalents should also be dismissed because the doctrine of equivalents claims are barred by collateral estoppel as well. *See Wisconsin Alumni Research Foundation v. Apple Inc.*, 112 F.4th 1364, 1378–84 (Fed. Cir. 2024) (ruling that the issue of literal infringement and infringement under the doctrine of equivalents "are the same issue for issue-preclusion purposes," wherein the patentee had waived any argument of infringement under the doctrine of equivalents in the first case). Like the plaintiff in *Wisconsin Alumni Research Foundation*, OEW failed to raise any arguments under the doctrine of equivalents in *Apple*, and cannot get a second chance to raise such arguments because "literal infringement and the doctrine of equivalents are part of the same overall issue of infringement." *Id*. at 1379. Accordingly, the Court should dismiss OEW's claims of direct infringement under the doctrine of equivalents with prejudice.

18

**C.    OEW's Claims of Induced and Contributory Infringement Should Be Dismissed**

OEW's claims of induced and contributory infringement should also be dismissed because OEW cannot prove an underlying act of direct infringement as the required predicate for those claims. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement . . . .").

Accordingly, the Court should dismiss OEW's claims of induced and contributory infringement by Dell.

**D.    The Complaint Should be Dismissed with Prejudice Because Amendment Would be Futile**

In *Apple*, OEW already litigated the same or similar patents on products compliant with the same Bluetooth standard, where OEW attempted to cure its insufficient pleading twice, but eventually OEW's complaint in *Apple* was found to be incurable. OEW's Complaint here ignores the issues raised in *Apple*, and fails to raise any new issues that would avoid issue preclusion. Specifically, OEW's Complaint in the present litigation fails to identify any infringement for the "unique user code" limitations included in each patent claim being asserted. The fact that OEW fails to state a claim in this case, and instead repeats its allegations that were found to be deficient in *Apple*, demonstrates that OEW is unable to state a valid claim of infringement against the Bluetooth standard, so OEW's claims here should be dismissed with prejudice. *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (holding a complaint is properly dismissed with prejudice when amendment would be futile); *see also CTD Networks, LLC v. Amazon.com, Inc.*, 688 F. Supp. 3d 436, 447 (W.D. Tex. 2023) (dismissing with prejudice patent infringement claims for failing to plead any allegations that the accused infringer

could plausibly infringe and, further denying leave to amend since the patentee failed to explain how it could cure the pleading deficiencies).

## V.    CONCLUSION

For the foregoing reasons, Dell respectfully requests that the Court dismiss Plaintiff's claims for direct, induced and contributory infringement with prejudice.

Dated: March 21, 2025                    Respectfully submitted,

                                         /s/ *Barry K. Shelton*
                                         Barry K. Shelton
                                         Texas State Bar No. 24055029
                                         **SHELTON COBURN LLP**
                                         311 RR 620, Suite 205
                                         Austin, TX 78734-4775
                                         bshelton@sheltoncoburn.com
                                         (512) 263-2165 (Telephone)
                                         (512) 263-2166 (Facsimile)

                                         *Counsel for Dell Technologies Inc. and*
                                         *Dell Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 21, 2025, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to all counsel of

record.

/s/ <em>Barry K. Shelton</em>
Barry K. Shelton
