EXHIBIT E

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
BENJAMIN S. LIN (232735)
(blin@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:  +1 650 843 5000
Facsimile:   +1 650 849 7400

COOLEY LLP
PHILLIP E. MORTON (VA SBN 71299)
(admitted *pro hac vice*)
(pmorton@cooley.com)
1299 Pennsylvania, N.W, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7889

Attorneys for Defendant
Apple Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ONE-E-WAY, INC., a California Corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>APPLE INC., a California Corporation,<br><br>   Defendant. | Case No. 2:20-CV-06339-JAK-GJS<br><br>**APPLE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>DATE: June 2, 2022<br>TIME: 1:30 p.m.<br>CTRM: 10B<br>JUDGE: Hon. John A. Kronstadt |

COOLEY LLP

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 2, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable John A. Kronstadt at Courtroom 10B, located at First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, or in such other manner, time, and place as the Court may direct, Defendant Apple Inc. ("Apple") will, and hereby does move for an order granting Apple's motion for summary judgment of non-infringement of U.S. Patent Nos. 10,129,627 and 10,468,047.

This motion is based upon this notice, the accompanying memorandum of points and authorities, the declaration of Lowell D. Mead ("Mead Decl.") and accompanying exhibits, and upon such other and further matters, papers, and arguments as may be submitted to the Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 28, 2022.

Dated:     April 21, 2022         By: /s/ Heidi L. Keefe
                                      HEIDI L. KEEFE (178960)
                                      (hkeefe@cooley.com)
                                      LOWELL D. MEAD (223989)
                                      (lmead@cooley.com)
                                      BENJAMIN S. LIN (232735)
                                      (blin@cooley.com)
                                      COOLEY LLP
                                      3175 Hanover Street
                                      Palo Alto, CA 94304-1130
                                      Telephone: +1 650 843 5000
                                      Facsimile:  +1 650 849 7400

                                      Attorneys for Defendant
                                      Apple Inc.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS .................................................................... 1

      A.    The Claimed "Unique User Code" Requires a Fixed Code
            "Specifically Associated With One User of a Device(s)." ................... 1

      B.    After Apple Moved to Compel, OEW Accuses the Channel
            Access Code ("CAC") and/or Logical Transport Address
            ("LT_ADDR") As the Alleged "Unique User Code." ......................... 4

      C.    The Accused Bluetooth Channel Access Code (CAC) and
            Logical Transport Address (LT_ADDR) Are Not Specifically
            Associated With One User of a Device. ............................................. 6

III.  LEGAL STANDARDS. ...................................................................... 12

IV.   SUMMARY JUDGMENT OF NON-INFRINGEMENT IS
      APPROPRIATE. .............................................................................. 13

      A.    The Bluetooth Devices Codes Accused By OEW Are Not a
            "Unique User Code." ...................................................................... 13

      B.    OEW Has Not Raised Any Basis To Avoid Summary Judgment. ...... 15

V.    CONCLUSION. ................................................................................ 17

Cooley LLP

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017) ........................................................... 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................... 12, 13

*Exigent Tech., Inc. v. Atrana Sols., Inc.*
442 F.3d 1301 (Fed. Cir. 2006) .......................................................... 13

*Foundton, Co. v. Naschem Co.*,
Case No. LA CV14-09829 JAK (MRWx), 2016 WL 7443228 (C.D. Cal. Nov. 21, 2016) ........................................................... 13

*MyMail, Ltd. v. Am. Online, Inc.*,
476 F.3d 1372 (Fed. Cir. 2007) .......................................................... 17

*Signal IP, Inc. v. Kia Motors Am., Inc.*,
Case No. LA CV 14-02457 JAK, 2016 WL 6775690 (C.D. Cal. Apr. 22, 2016) ........................................................... 12

*Sound View Innovations, LLC v. Hulu, LLC*,
Case No. LA VC 17-04146 JAK (PLAx), 2020 WL 6821317 (C.D. Cal. Oct. 20, 2020) ........................................................... 12

*SpeedTrack, Inc. v. Amazon.com, Inc.*,
998 F.3d 1373 (Fed. Cir. 2021) .......................................................... 14

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) .......................................................... 13

**Court Rules**

Fed. R. Civ. P. 56(a) ........................................................... 12

APPLE'S OPENING BRIEF ISO MSJ
2:20-CV-06339-JAK-GJS

## I.    INTRODUCTION

For more than a decade, One-E-Way, Inc. ("OEW") has demanded tribute from companies for implementing Bluetooth in their products, despite the facts that OEW contributed nothing to Bluetooth and its patents do not cover Bluetooth.  None of OEW's prior litigations proceeded through a ruling on the issue of infringement.[1] This case, however, is ripe for judgment.

Summary judgment of non-infringement is warranted because OEW does not and cannot show that the accused products implement the "unique user code" required by all asserted claims.  The term "unique user code" means "fixed code (bit sequence) that is specifically associated with one user of a device(s)" (Dkt. 86 at 8), following the construction previously adopted in prior litigation at the ITC.  The claimed "unique user code" must be a fixed code "*specifically* associated with *one user* of a device(s)," not merely associated with one or more *devices*, as OEW accuses in this case.

In fact, OEW repeatedly avoided prior art at the Patent Office based on the distinction between *device* codes and *user* codes, which dooms OEW's infringement theory accusing only Bluetooth device codes.  OEW cannot have it both ways:  its basis for avoiding invalidity forecloses a finding of infringement.  The Court should grant summary judgment of non-infringement, fully disposing of this action.

## II.    STATEMENT OF FACTS.

### A.    The Claimed "Unique User Code" Requires a Fixed Code "Specifically Associated With One User of a Device(s)."

All asserted claims require a device that can transmit or receive a "unique user code."[2]   Statement of Undisputed Facts ("SUF"), ¶ 2.   Pursuant to the parties'

---

[1] OEW's prior litigations are summarized at Dkt. 24, pages 2-3.

[2] Two patents remain asserted:  U.S. Patent Nos. 10,129,627 (the "'627 patent") and 10,468,047 (the "'047 patent").  The asserted claims are claims 1-6, 10-12 of the '627 patent, and claims 1-6, 8-15, 17-20 of the '047 patent.  *Cf*. Dkt. 82 (dismissing '391 patent).

agreement (Dkt. 63 at 1), the Court construed "unique user code" to mean "fixed code (bit sequence) specifically associated with one user of a device(s)."  Dkt. 86 at 8.

The intrinsic evidence required this construction.  First, the plain words indicate that the "unique user code" is a unique *user* code; it is not a *device* code. Likewise, the patents' shared written description describes that the "unique user code" is *specifically associated with one user* of the disclosed system:  "The *unique user code* generated is *specifically associated with one* wireless digital audio system *user*, and it is the only code recognized by the battery powered headphone receiver **50** operated by a particular user."  SUF ¶ 3 ('627, col. 2:66-3:3).[3]

During prosecution of related predecessor patents, OEW repeatedly distinguished prior art on the basis that the claimed "unique user code" must be specifically associated with *one user* of a device, not merely associated with the *device*.  For example, OEW distinguished prior art codes that "are *assigned to specific devices* for a single household—*not individual users*.  As such, the [prior art] code may be properly deemed a *'device code' as opposed to a 'user code' as in the present invention*."  SUF ¶ 11.  Similarly, OEW proclaimed that an "FM frequency" feature in the prior art "does not equate to a 'unique user code' as defined within the specification *because it cannot provide each user with a unique code*."  SUF ¶ 14; *see also* SUF ¶ 12 (OEW discussing "*a unique codeword for an individual user*"), ¶ 13 ("Within the present invention, *the unique user codeword specific to a particular user* is detected out of other code words from wireless digital audio systems . . .").

In prior litigation OEW brought at the ITC, the parties disputed the meaning of "unique user code."[4]  OEW initially attempted to back away from its proclamations to the Patent Office, proposing the construction "code (bit sequence) that *distinguishes a transmission of a user's device from those of other users' devices*,

---

[3] All emphasis within quoted text herein is added unless otherwise specified.
[4] The ITC litigation addressed two predecessor patents with the same written description as the two patents asserted here.

and the code is fixed during that transmission." SUF ¶ 17. The presiding Administrative Law Judge ("ALJ") rejected OEW's construction. SUF ¶¶ 18-19. The ALJ construed "unique user code" to mean "fixed code (bit sequence) specifically associated with one user of a device(s)" in view of the intrinsic record including OEW's statements during prosecution. SUF ¶ 20. The ITC order emphasized that this "construction *makes clear the fixed code is associated with 'one user (of a device(s))' and not a 'user's device.'*" SUF ¶ 18. OEW ultimately conceded to the ALJ's construction and "abandoned its previous arguments to the contrary." SUF ¶ 18. OEW's litigation at the ITC eventually settled before any decision on the issue of infringement.

OEW filed the present action against Apple in July 2020. Dkt. 1. OEW's initial infringement contentions accused features of Bluetooth, as discussed further below. After receiving OEW's contentions, Apple filed petitions for *inter partes* review ("IPR") with the Patent Trial and Appeal Board ("PTAB") that relied in part on prior art references disclosing features of Bluetooth, including a reference to Haartsen.[5] On the "unique user code" limitation, Apple's IPR petitions noted the ITC's claim construction while also relying on OEW's apparent infringement theory against Bluetooth in this litigation. SUF ¶ 21.

In June 2021, the PTAB relied on the same claim construction of "unique user code" to deny institution of Apple's IPR petitions. SUF ¶ 21. The PTAB found that the Bluetooth prior art (Haartsen) did not disclose the "unique user code" as construed. The PTAB stated as follows, emphasizing certain key points:

In setting forth this construction, the ITC emphasized that its "construction makes clear that ***the fixed code is associated with 'one user (of a device(s))' and not a 'user's device.***'" Ex. 1130, 37 (emphasis added). We agree with the ITC that this understanding flows from the ordinary meaning of the construction adopted, and note that Petitioner appears to rely on it as well. *See* Pet. 15 ("the ITC construed

_____

[5] Mr. Jaap C. Haartsen is a well-known original contributor to Bluetooth. *See* https://www.invent.org/inductees/jaap-c-haartsen (last visited April 20, 2022).

'**unique user code**' as a 'fixed code (bit sequence) **specifically associated with one user** of a device"). Petitioner, however, fails to show that Haartsen discloses a unique user code that is associated with *one user of a device, rather than a device itself*.

Indeed, Petitioner acknowledges that "in prior art Bluetooth as described in Haartsen, the frequency hop sequence is determined from the device identity of a transmitter known as the 'master,'" rather than from a user associated with the device. Pet. 70. Petitioner's assertion is supported by Haartsen's disclosure, which states that the frequency hop sequence is determined by the device identity of the "master" transmitter. As Haartsen explains:

> **The particular sequence is determined by the unit that controls the FH channel, which is called the *master***. The native clock of the master unit also defines the phase in the hopping sequence. **All other participants on the hopping channel are *slaves*, they use the master identity to select the same hopping sequence** and add time offsets to their respective native clocks to synchronize to the frequency hopping.

Ex. 1105, 30 (emphasis added). Thus, Haartsen discloses that the code that determines the frequency hop sequence is based on the identity of the master device, rather than being associated with "one user of a device," as required by the ITC's construction of "unique user code."

SUF ¶ 21 (emphasis in original).  Thus, OEW's patents escaped the IPR challenge because the prior art Bluetooth codes were associated with *devices*, and specifically "based on the identity of the master device," not specifically associated with *one user* of a device(s).

In this case, the parties agreed to, and the Court adopted, the same construction of "unique user code" applied by the ITC and the PTAB.  Dkt. 86 at 8.

**B.  After Apple Moved to Compel, OEW Accuses the Channel Access Code ("CAC") and/or Logical Transport Address ("LT_ADDR") As the Alleged "Unique User Code."**

OEW accuses two categories of Apple products: "receiver" products that can receive audio using Bluetooth, including AirPods and Beats products, and "transmitter" products that can transmit audio using Bluetooth, including iPhone, iPad, Watch, and iPod products.  SUF ¶ 8.

Despite multiple attempts to find a viable infringement theory, OEW has failed. OEW's original infringement contentions failed to specify what, if anything, in the accused Apple products allegedly corresponds with the claimed "unique user code." OEW's contentions cited only excerpts of the Bluetooth specification that discuss various items including a device access code (DAC), a channel access code (CAC), an inquiry access code (IAC), and a Bluetooth device address (BD_ADDR). *E.g.*, Dkt. 24-2 at 064-065. OEW did not specify what, if anything, was the alleged "unique user code." OEW alleged:

> Each Accused Receiver Device is configured to receive a unique user code. For example:
>
> > 1.3 ACCESS CODES
> >
> > In the Bluetooth system all transmissions over the physical channel begin with an access code. Three different access codes are defined,
> >
> > see also Section 6.3.1:
> >
> > • device access code (DAC)
> >
> > • channel access code (CAC)
> >
> > • inquiry access code (IAC) . . .
>
> *See also*, for example:
>
> > Each Bluetooth device shall be allocated a unique 48-bit Bluetooth device address (BD_ADDR). . . .

*Id.*

Because OEW's contentions failed to comply with this Court's Patent Local Rules, Apple filed a motion to strike or compel compliant contentions. *See* Dkt. 24 at 11-13. After Apple filed its motion, OEW amended its infringement contentions to accuse only two items in Bluetooth: the channel access code (CAC), or the CAC in connection with a logical transport address (LT_ADDR). *See* Dkt. 36 at 6-7, Dkt. 37-6 at 84 *et seq.* (Oct. 2020 amendment); Dkt. 62 at 4-5.

After a stay of litigation, the Court in August 2021 granted-in-part Apple's motion, directing that "OEW shall serve amended infringement contentions

consistent with this Order within 14 days of the issuance of this Order."  Dkt. 62 at 10.  Pursuant to the Court's order, OEW thereafter served its second amended contentions, which are its currently operative contentions.  SUF ¶ 7.  OEW's contentions maintained the same theory on the "unique user code."  For the accused "receiver" products, OEW alleges that each "Accused Receiver Device" is configured to "receive" (or "receive and store") a "unique user code," and then states:

> The Bluetooth specification requires the use of certain unique bit sequences to operate in accordance with the specification. The CAC, and the CAC in connection with the LT_ADDR, are such bit sequences.

SUF ¶ 23.  For the accused "transmitter" products, OEW applies the same contention except the first sentence states that  each "Accused Transmitter Device" is configured to "transmit" or "use" a unique user code.  SUF ¶ 24.  The contentions cite only the Bluetooth specification for the "unique user code" limitations.  SUF ¶¶ 23-24.  OEW does not provide any contention regarding the "unique user code" that is specific to any particular accused Apple product.  SUF ¶ 23-24.

### C. The Accused Bluetooth Channel Access Code (CAC) and Logical Transport Address (LT_ADDR) Are Not Specifically Associated With One User of a Device.

The accused Channel Access Code (CAC), alone or in combination with the Logical Transport Address (LT_ADDR), does not constitute a fixed code *specifically associated with one user* of a device or devices.  Dkt. 86 at 8.  Instead, these items are associated with *devices* in a Bluetooth piconet.

Bluetooth was originally developed and standardized in the late 1990s, years before OEW filed its first patent application in December 2001.  SUF ¶ 41.  OEW and the named inventor on its patents have never been involved with the Bluetooth standard.  SUF ¶ 25 ("Neither One-E-Way nor Mr. Earl Woolfork has ever had any involvement with the design, development, and/or drafting of any communication standard, including any standards relating to any Bluetooth standard.").

The Bluetooth specification describes that Bluetooth enables communication

between devices: "Bluetooth wireless technology is a short-range communications system intended to replace the cable(s) connecting portable and/or fixed electronic devices." SUF ¶ 26.[6] "The typical operational mode of a Bluetooth device is to be connected to other Bluetooth devices (in a piconet) and exchanging data with those Bluetooth devices." SUF ¶ 27. The specification explains how a synchronized group of "master" and "slave" devices form a "piconet":

> During typical operation a physical radio channel is shared by a group of devices that are synchronized to a common clock and frequency hopping pattern. One device provides the synchronization reference and is known as the master. All other devices synchronized to a master's clock and frequency hopping pattern are known as slaves. A group of devices synchronized in this fashion form a piconet.

SUF ¶ 28.

The devices in a piconet communicate with each other using various codes, including the channel access code (CAC). As its name suggests, the CAC is not specifically associated with one user of a device or devices. Instead, the CAC is derived from the Bluetooth device address (BD_ADDR) of the master device. The specification describes that "[e]ach Bluetooth device shall be allocated a unique 48-bit Bluetooth device address (BD_ADDR)." SUF ¶ 29. "The Bluetooth device Address, BD_ADDR, is used to identify a Bluetooth device." SUF ¶ 30. The BD_ADDR contains several fields including the Lower Address Part (LAP). SUF

---

[6] This motion cites the same version of the Bluetooth specification cited in OEW's infringement contentions, version 5.0.

¶ 33.  The following figure illustrates the format of BD_ADDR including the LAP.



| LSB | | | | | | | | | | | MSB |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EUI-48 | | | | | | | | | | | |
| LAP | | | | | | UAP | | NAP | | | |
| 0000 | 0001 | 0000 | 0000 | 0000 | 0000 | 0001 | 0010 | 0111 | 1011 | 0011 | 0101 |

*Figure 1.5:  Format of BD_ADDR*

SUF ¶ 33.  The CAC is "derived from the LAP of the master's BD_ADDR." SUF ¶ 31.

The CAC in connection with the logical transport address (LT_ADDR) also is not specifically associated with one user of a device or devices.  An LT_ADDR is assigned by the master device to each slave device: "Each slave active in a piconet is assigned a primary 3-bit logical transport address (LT_ADDR)."  SUF ¶ 34.  "The primary LT_ADDR shall be assigned by the master to the slave when the slave is activated."  SUF ¶ 35.  A "secondary" LT_ADDR may also be assigned.  SUF ¶ 35.

The CAC and LT_ADDR are transmitted in packets that are communicated among devices in a piconet.  "All packets include the channel access code. This is used to identify communications on a particular physical channel, and to exclude or ignore packets on a different physical channel that happens to be using the same RF carrier in physical proximity."  SUF ¶ 36.  "The packet header carries the LT_ADDR, which is used by each receiving device to determine if the packet is addressed to the device and is used to route the packet internally."  SUF ¶ 37.

The following figure illustrates a packet structure including the CAC and the packet header that contains the LT_ADDR.  Highlighting is added for reference.



*Figure 3.4: BR/EDR packet structure*

SUF ¶ 38 (highlighting added).

As shown in these descriptions, the CAC and LT_ADDR are associated with *devices* that communicate in a Bluetooth piconet. Nothing in the CAC or LT_ADDR contains or reflects any information about *one specific user* of a device. The CAC is derived from the master device's Bluetooth device address, and is used to identify communications on a particular physical channel. The LT_ADDR is assigned by the master device to each slave device in the piconet, and is used for addressing and routing packets transmitted between devices. The CAC (alone or with the LT_ADDR) is agnostic as to whether or not a given device or set of devices is being used by one specific user, shared by multiple different users, handed from one user to another, or sitting on a table operating without any user. As such, neither the CAC, nor the CAC together with the LT_ADDR, is *specifically associated with one user* of a device(s).

The user-agnostic nature of the CAC (alone or with the LT_ADDR) is illustrated by the variety of Apple products OEW accuses of infringement—including iPhone, iPad, iPod, Apple Watch, AirPods, Beats headphones, HomePod smart speakers, and Beats Pill speaker devices—and by OEW's infringement contentions. OEW's contentions for the "unique user code" are the same for each

9

alleged "transmitter" device (*e.g.*, iPhone, iPad, and Watch) and each alleged "receiver" device (*e.g.*, AirPods, Beats, HomePod, and Beats Pill devices). SUF ¶¶ 23, 24.[7]  Nothing in OEW's infringement contentions indicates that the CAC (alone or with the LT_ADDR) is specifically associated with one user of any device or devices.  An accused Beats Pill+ product, for example, is a speaker that can be placed somewhere (for example, on a shelf) to play music transmitted wirelessly from another device (for example, a smartphone).   An example Beats Pill+ is shown below.



As an illustration, in a Bluetooth piconet including a smartphone transmitting music across the room to one or more Pill+ devices, the CAC is based upon the Bluetooth device address (BD_ADDR) of the master device, and an LT_ADDR will be assigned by the master to each slave device, according to the Bluetooth specification as cited in OEW's infringement contentions.   Nothing in OEW's contentions indicates that the CAC and any LT_ADDR are different or modified depending on whether a device owner, nobody, a non-device owner, or many people happen to be located at or near the Pill+ device(s) and/or the smartphone, or temporarily walking by.

---

[7] For purposes of this motion, it is assumed that each accused product is capable of receiving and/or transmitting the CAC and LT_ADDR consistent with the Bluetooth specification as alleged in OEW's infringement contentions.

As another illustration, OEW accuses AirPods products. An example AirPods (two earbuds and a case) is shown to the right. One person may wear both earbuds, or the earbuds may be split between two people. The AirPods may play music transmitted over Bluetooth from a transmitting device, such as a smartphone. The smartphone transmitting the music could be operated by  one or both of the people using the AirPods, or it could operated by someone else, or it could sit on a desk. According to the Bluetooth specification cited in OEW's contentions, the CAC is derived from the master's BD_ADDR and transmitted (alone or together with any LT_ADDR) in Bluetooth packets regardless of any particular user or users of the devices; is not *specifically associated with one user* of a device(s).

Similarly, the accused iPhone products can transmit audio via Bluetooth to other devices (such as AirPods and Beats earphone, headphone, or speaker products) regardless of whether one person is holding the iPhone, two people are holding the iPhone, nobody is holding the iPhone and it is sitting on a table, or the iPhone is being passed around and being used by different people while transmitting the audio. Example accused iPhone products are shown below.



Nothing in OEW's contentions indicates that the presence, absence, or changing of any specific *user* of the devices determines the CAC (alone or with the LT_ADDR) that may be transmitted between an iPhone and other devices as per the Bluetooth

specification. Again, the CAC (alone or with the LT_ADDR) is not specifically associated with one user of a device(s).

Similar observations hold true of all of the other products OEW has accused and OEW's infringement contentions regarding each accused product. Nothing in OEW's contentions provides anything to the contrary.

These accused features of Bluetooth are not recent additions. In fact, they predate OEW's earliest patent application filing. Substantially similar features were present in the original versions of Bluetooth developed more than two years before OEW's earliest claimed patent filing date in December 2001. SUF ¶ 41. The CAC was specified in substantially similar form in early versions from 1999. SUF ¶ 41 (*e.g.*, "The channel access code is derived from the LAP of the master BD_ADDR."). The feature now called LT_ADDR was predated by an "active member address (AM_ADDR)" with substantially similar relevant features. SUF ¶ 42 (*e.g.*, "Each slave active in a piconet is assigned a 3-bit active member address (AM_ADDR).").

These types of Bluetooth *device* codes were thus known long before OEW's patent filings. OEW's patents went in a different direction, requiring a unique *user* code that is specifically associated with one *user* of a device or devices.

## III.    LEGAL STANDARDS.

This Court is familiar with the summary judgment standard. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Summary judgment is as appropriate in a patent case as in any other." *Sound View Innovations, LLC v. Hulu, LLC*, Case No. LA VC 17-04146 JAK (PLAx), 2020 WL 6821317, at *2 (C.D. Cal. Oct. 20, 2020) (citation omitted) (granting summary judgment of non-infringement). To obtain summary judgment of noninfringement, "nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Signal IP, Inc. v. Kia Motors Am., Inc.*, Case No. LA CV 14-02457 JAK (JEMx), 2016 WL 6775690, at *7 (C.D. Cal. Apr.

22, 2016) (quoting *Exigent Tech., Inc. v. Atrana Sols., Inc*. 442 F.3d 1301, 1309 (Fed. Cir. 2006)) (granting summary judgment of non-infringement).  "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326 (Fed. Cir. 2013) (citation omitted).

If the non-moving party fails to produce evidence sufficient to show a genuine issue of material fact, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322-23 (citation omitted).  "Summary judgment may also be appropriate when a non-moving party bases its opposition on theories that are not stated in its infringement contentions." *Foundton*, *Co. v. Naschem Co.,* Case No. LA CV14-09829 JAK (MRWx), 2016 WL 7443228, at *5 (C.D. Cal. Nov. 21, 2016) (citations omitted) (granting summary judgment of non-infringement).

## IV.  SUMMARY JUDGMENT OF NON-INFRINGEMENT IS APPROPRIATE.

### A.  The Bluetooth Devices Codes Accused By OEW Are Not a "Unique User Code."

Summary judgment of non-infringement is appropriate because OEW has not and cannot meet its burden to show that any of the accused products satisfy the "unique user code" limitation.  *Celotex*, 477 U.S. at 322-23; *Exigent*, 442 F.3d at 1308-09.  The term "unique user code" was construed to require a fixed code that is "specifically associated with one user of a device(s)."  Dkt. 86 at 8.  As the ITC and PTAB both observed, this "construction makes clear that the fixed code is *associated with 'one user (of a device(s))' and not a 'user's device*.'"  SUF ¶¶ 18, 21.  The unique user code must be "associated with *one user of a device, rather than a device itself*."  SUF ¶ 21.  OEW's infringement contentions accuse the CAC alone or in connection with the LT_ADDR, but those items are associated with *devices*.

Neither the CAC alone or the CAC in connection with the LT_ADDR is a fixed code *specifically* associated with *one* *user* of a device(s).  Because there is no showing of infringement, summary judgment should be granted.

The PTAB record further confirms that OEW's infringement case fails as a matter of law.  The patents-in-suit survived invalidity over Bluetooth prior art because the PTAB determined that the claim construction of "unique user code" cannot be satisfied by a code that is "*based on the identity of the master device, rather than being associated with 'one user of a device*.'"  SUF ¶ 21.  The same reasoning dooms OEW's infringement case.  The CAC is based on the identity of the master device:  it is derived from a portion of the Bluetooth device address (BD_ADDR) of the master device.  SUF ¶ 31.  The CAC is not specifically associated with one user of a device(s).  Neither is the CAC in connection with the LT_ADDR.  The CAC is derived from the BD_ADDR of the master device, and the LT_ADDR is assigned by the master device to a slave device.  SUF ¶¶ 31, 35.  As OEW proclaimed to the Patent Office, codes that "are *assigned to specific devices . . . not individual users . . . may* be properly deemed a *'device code' as opposed to a 'user code' as in the present invention*."  SUF ¶ 11.  By the same token, the CAC and LT_ADDR may be properly deemed *device* codes as opposed to a fixed *user* code that is *specifically* associated with *one user* of a device(s).  Claims may not be "construed one way in order to obtain their allowance and in a different way against accused infringers." *SpeedTrack, Inc. v. Amazon.com, Inc.*, 998 F.3d 1373, 1380 (Fed. Cir. 2021) (citation omitted).  This principle "promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360-61 (Fed. Cir. 2017) (citation omitted).

Because OEW's infringement contentions are devoid of any theory showing the claimed "unique user code" as properly construed by this Court is practiced by any of the accused products, summary judgment of non-infringement is warranted.

**B.    OEW Has Not Raised Any Basis To Avoid Summary Judgment.**

No argument raised by OEW during the parties' meet and confer provides any basis to avoid summary judgment.  For example, OEW raised the irrelevant point that the "unique user code" is received and recognized by a device (for example, a receiver), not received and recognized by a human user.  But that is immaterial.  The unique user code must be a fixed code that is "*specifically associated with one user* of a device(s)*.*"  Dkt. 86 at 8.  The dispositive point here is the requirement for the *specific association with one user*.  For example, if a device transmitted a code uniquely representing a biometric fingerprint scan or eye scan from one user of the device, that code might qualify as a "unique user code" because it would be specifically associated with one user of the device.[8]  But no such specific association with one user of a device(s) exists in the Bluetooth device codes that OEW accuses.

OEW further attempted to erroneously expand the notion of "association" in a way that would ignore the requirements of the claim construction.  OEW assumes that when a device transmits or receives the accused Bluetooth device codes, the codes effectively become associated with whichever user might be using the device at a given time.  But that argument would erase the critical distinction between the *device* and the *user*.  As the ITC order and the PTAB both emphasized, the "construction makes clear that the fixed code is *associated with 'one user (of a device(s))' and not a 'user's device.'*"  SUF ¶¶ 18, 21.  OEW's argument would also improperly expand the claims to cover prior art disclosures that OEW avoided at the Patent Office.  For example, at the Patent Office, OEW argued that prior art codes that "are *assigned to specific devices* for a single household—*not individual users* . . . may be properly deemed a *'device code' as opposed to a 'user code' as in the*

---

[8] In fact, user-specific biometric codes (*e.g.*, fingerprint, eye patterns) were known in the art well before OEW's first patent application filing in December 2001.  *E.g.*, Mead Ex. M (U.S. Patent No. 6,483,930 (filed May 1999) at 1:22-27, 6:61-7:11, 14:20-29, 14:65-15:19 (biometrics, IRISCODE)); Ex. N (U.S. Patent No. 7,284,266 (filed March 2000) at 1:31-57, 2:22-56 (fingerprint sensor); Ex. O (U.S. Patent No. 6,732,278 (filed February 2001) at 3:44-4:31, 6:12-7:11, 11:21-25, 15:18-38, 15:64-65 (biometrics)).

*present invention*." SUF ¶¶ 11-15. Similarly, the PTAB declined to invalidate OEW's patents over Bluetooth prior art because the prior art codes were based on "the device identity of the 'master' transmitter," just like the accused CAC here. SUF ¶ 21. A *device* code is not transformed into a unique *user* code, as claimed, merely because someone happens to be using a device at a given time. OEW's contrary position attempts to rewrite history and ignores the express requirements that the "unique user code" must be *specifically* associated with *one user* of a device(s).

For similar reasons, there is no merit to OEW's argument that the claim construction requires the unique user code to be associated with one user "of a device(s)" as opposed to being associated with a person who is not using a device. OEW noted that the ITC's claim construction stated that the unique user code is associated with one "user of a device(s)" rather than stating only that it is associated with one "user." But the claim construction expressly requires the unique user code to be "*specifically associated with one user* of a device(s)." Dkt. 86 at 8. The "user" (the person) is distinct from the "device" (the apparatus), and the unique user code must be "specifically" associated with "one" user. As the ITC and PTAB emphasized, this "construction makes clear that the fixed code is *associated with 'one user (of a device(s))' and not a 'user's device.'*" SUF ¶¶ 18, 21. The CAC, alone or in connection with the LT_ADDR, is not specifically associated with one user of a device(s).

Finally, during the meet and confer prior to this filing, OEW did not argue that it needs any further discovery prior to summary judgment on this issue (given that its infringement theory on the "unique user code" is based on the Bluetooth specification), and did not propose to seek any amendment to its infringement contentions. *See also* Dkt. 89 (OEW did not oppose early disposition of Apple's planned motion for summary judgment). OEW did suggest that it might attempt to argue a different claim interpretation, attempting to back away from the agreed construction that the Court has now ordered. But OEW served its Court-ordered

1  operative infringement contentions and agreed to this construction *after* the PTAB's

2  decisions applying the same construction in a way that forecloses OEW's

3  infringement theory.  OEW could have attempted to argue a different position prior

4  to the Court's *Markman* ruling, but did not do so.  Dkt. 86 at 9 ("The parties' agreed

5  constructions are accepted and are binding.") (citing *MyMail, Ltd. v. Am. Online,*

6  *Inc.*, 476 F.3d 1372, 1377-78 (Fed. Cir. 2007)).

7  **V.    CONCLUSION.**

8         For the foregoing reasons, summary judgment of non-infringement should be

9  granted.

10

11  Dated:        April 21, 2022              By: /s/ *Heidi L. Keefe*
12                                                HEIDI L. KEEFE (178960)
                                                  (hkeefe@cooley.com)
13                                                LOWELL D. MEAD (223989)
                                                  (lmead@cooley.com)
14                                                BENJAMIN S. LIN (232735)
15                                                (blin@cooley.com)
                                                  COOLEY LLP
16                                                3175 Hanover Street
17                                                Palo Alto, California  94304-1130
                                                  Telephone: +1 650 843 5000
18                                                Facsimile:  +1 650 849 7400
19
                                                  PHILLIP E. MORTON (VA SBN
20                                                71299)
21                                                (admitted *pro hac vice*)
                                                  (pmorton@cooley.com)
22                                                COOLEY LLP
23                                                1299 Pennsylvania, N.W, Suite 700
                                                  Washington, DC 20004
24                                                Telephone: (202) 842-7800
25                                                Facsimile: (202) 842-7889
26
                                                  Attorneys for Defendant
27                                                Apple Inc.
28